Quentin M. Rhoades
**RHOADES SIEFERT & ERICKSON PLLC**
430 Ryman Street
Missoula, Montana  59802
Telephone: (406) 721-9700
courtdocs@montanalawyer.com
*Pro Hac Vice Application Pending*

Bradley L. Booke #5-1676
P.O. Box 13160
Jackson, WY 83002
Telephone: 702-241-1631
brad.booke@lawbooke.com

*Pro querente*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STEVEN DAKOTA KNEZOVICH, an individual, STEVEN L. KNEZOVICH and DEBORA M. KNEZOVICH, husband and wife, ANDREW M. TAYLOR, and DENA DEA BAKER, husband and wife, RICHARD D. WRIGHT and DEONE R. WRIGHT, husband and wife, and THE HOBACK RANCHES PROPERTY OWNERS IMPROVEMENT AND SERVICE DISTRICT, COUNTY OF SUBLETTE, STATE OF WYOMING, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No.: <br><br><br><br> ***COMPLAINT*** <br> ***AND*** <br> ***REQUEST FOR*** <br> ***ADVISORY JURY TRIAL*** |

Steven Dakota Knezovich, an individual; Steven L. Knezovich and Debora M. Knezovich, husband and wife; Andrew M. Taylor and Dena Dea Baker, husband and wife; Richard D. Wright and Deone R. Wright, husband and wife; and the Hoback Ranches Property Owners Improvement and Service District, County of Sublette, State of Wyoming state for their Complaint as follows:

## INTRODUCTION

1.     This is a civil action brought under 28 U.S.C. § 2671, et seq., the Federal Tort Claims Act (FTCA), to obtain a money judgment in compensation for negligence claims arising from Defendant United States of America's response to the Roosevelt Fire on the Bridger-Teton National Forest in Lincoln and Sublette Counties, State of Wyoming in mid-September of 2018.  In this case, Defendant United States of America, acting through its agency, the United States Department of Agriculture Forest Service (Forest Service) chose not to suppress the Roosevelt Fire.  It decided instead to use it as a restoration fire for the achievement of resource benefits, resulting in substantial personal injury, property damage, and special and general damages to Plaintiffs.

2.     This Forest Service decision to use the Roosevelt Fire to achieve resource benefits violated federal policy, both the then applicable *Interagency*

2
—

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

*Standards for Fire and Fire Aviation Operations (Interagency Standards* (January 2017) and the *Forest Service Manual* (August 2018), which specifically prescribed a different course of action for the Forest Service than was the course of action actually followed. The policy required that all human-caused fires must be suppressed "and must not be managed for resource benefits." The Forest Service had no rightful option but to adhere to this directive. It enjoyed no discretion in whether to adhere to the federal policy of suppressing human-caused fire. The Forest Service decision to use the Roosevelt Fire to achieve natural resources benefits directly violated its own non-discretionary policy.

3.     In addition, as to the personal injury claims of the Knezoviches, the Forest Service failed to warn them that the fire would not be suppressed, which failure was a blunder, not a decision made under or subject to public policy analysis.

4.     The Forest Service also employed firing operations that resulted in the destruction of personal and real property owned by Plaintiffs Taylor and Baker, Plaintiffs Wright. The Forest Service had a duty to give correct information about the status and fire fighting plans at the daily briefings and meetings with landowners. Communications and daily briefings are informational in nature, not policy driven. The Forest Service's failure to give correct information to the Plaintiffs does not fall under the discretionary function exception to the FTCA.

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

5.     Finally, the use of unplanned fire to achieve natural resource benefits, which consists of major federal action, is not authorized by federal law because in deciding to use unplanned fire as a resource management tool, the Forest Service did not adhere to the National Environmental Policy Act, did not consult with the U.S. Fish and Wildlife Service under the Endangered Species Act and did not harmonize the action with the applicable Forest Plan as required by the National Forest Management Act.

6.     For these reasons, the discretionary function exception to the waiver of immunity set forth in the FTCA does not apply and does not immunize the Forest Service's wrongful acts and omissions.  Therefore, the Forest Service is liable to compensate Plaintiffs for the personal injuries and property damage they suffered due to the Forest Service's negligent fire management decisions.

## PARTIES

7.     Plaintiff Steven Dakota Knezovich is an individual, and citizen, and resident of the State of Wyoming. He suffered personal injury and loss of consortium due to the actions of Defendant in this case.

8.     Plaintiffs Steven L. Knezovich and Debora M. Knezovich are husband and wife, citizens, and residents of the State of Wyoming.  Steven suffered personal

injury, and they both suffered loss of consortium due to the actions of Defendant in this case.

9.      Plaintiffs Andrew M. Taylor and Dena Dea Baker are husband and wife and citizens and residents of the State of Wyoming. They suffered personal injury, loss of consortium, and damage to personal property due to the actions of Defendant in this case.  They also suffered damage to real property they own in Hoback Ranches subdivision in Sublette County Wyoming (Hoback Ranches) and described legally as:

> Lot One (1) of the Forest Glen Lot Division, Sublette County, Wyoming as set out on that plat map recorded in the Office of the County Clerk of Sublette County on September 8, 1999 in Book 70 of Misc., Page 169;
> TOGETHER WITH all improvements and appurtenances thereunto appertaining. SUBJECT TO reservations and restrictions contained in the United States patents, to easements and rights-of-way of record or in use, to prior mineral reservations of record and to all other matters of public record.
> SUBJECT TO covenants, conditions, restrictions and easements as recorded 5/4/76 in Book31 of Misc., Page 637; 10/17/95 in Book 65 of Misc., Page 165; as shown on the subdivision plat recorded 5/4/76 in Book 31 of Misc., Page 636; and as shown on the Forest Glen Lot Division, recorded September 8, 1999 in Book 70 of Misc., Page 169, in the office of the County Clerk for Sublette County, Wyoming.

10.     Plaintiffs Richard D. Wright and Deone R. Wright are husband and wife, and citizens and residents of the State of Arizona. They suffered damage to personal property and emotional distress due to the actions of Defendant in this case.

5
—

They also suffered damage to real property they own in Hoback Ranches described legally as:

> Tract Thirteen (13) Sheet Six (6) of the Hoback Ranches Subdivision, Sublette County, Wyoming, as the same appears on the official map or plat thereof as filed for record in the office of the County Clerk and Ex-Officio Register of Deeds for Sublette County, Wyoming;
>
> TOGETHER WITH all improvements and appurtenances thereunto appertaining.
> SUBJECT TO reservations and restrictions contained in the United States patents or of record, to easements and rights-of-way of record or in use and to prior mineral reservations of record.
> SUBJECT TO restrictions and covenants governing Hoback Ranches Subdivision as recorded in the office of the County Clerk. Sublette County, Wyoming;
> NO PROPOSED PUBLIC SEWAGE DISPOSAL SYSTEM.
> NO PROPOSED DOMESTIC WATER SOURCE.
> NO PROPOSED PUBLIC MAINTENANCE OF STREETS OR ROADS.

11.     Plaintiff Hoback Ranches Property Owners Improvement and  Service District (HRISD) is a duly constituted improvement and service district of the County of Sublette, State of Wyoming.  It is responsible for the construction, repair, and maintenance of the Hoback Ranches subdivision improvements and services damaged by the actions of Defendant in this case.

12.     Defendant United States of America acted, at all times relevant to the claims stated herein, through its agency, the United States Department of Agriculture Forest Service (Defendant is referred to hereinafter as "the Forest Service").

6

## JURISDICTION AND VENUE

13.    Plaintiffs have exhausted their administrative remedies, per 28 U.S.C. § 2675(a), as Plaintiffs timely submitted their claims to the relevant federal agency and the agency failed to act on Plaintiffs' administrative claims within six months of presentment.  Plaintiffs' claims are, therefore, ripe and justifiable.

14.    The Court has subject matter jurisdiction over this FTCA Act civil action pursuant to 28 U.S.C.A. § 1346(b)(1) because the action is on claims against the Forest Service, for money damages for injury or loss of property and personal injury caused by the negligent or wrongful act or omission of employees of the Forest Service while acting within the scope of their office or employment, under circumstances where the Forest Service, if a private person, would be liable to Plaintiffs in accordance with the law of the State of Wyoming, the place where the act or omission occurred.

15.    The discretionary function exception to the FTCA does not apply because the conduct at issue violated a federal statute, regulation, or policy and the Forest Service has no rightful option but to adhere to the directive.

16.    In addition, to the extent the Forest Service retained any discretion in its decision making, in this case, that discretion was not made under or subject to

policy analysis.  Because it does not include policy analysis, the failure to warn, in this instance, is not subject to the discretionary function exception to the FTCA.

17.     Venue in this Court is proper because all the activities that give rise to the causes of action alleged and damages occurred in the State of Wyoming.

## THE ROOSEVELT FIRE

18.     The Roosevelt Fire was an unplanned, human-caused wildfire in Bridger-Teton National Forest in the state of Wyoming. The ignition point was near the head of the Hoback River in the Wyoming Range, some 30 miles south of Jackson, Wyoming.  The fire was first reported on Saturday, September 15, 2018.

19.     Dakota Knezovich, his father Steven Knezovich, and others had a hunting camp in the area when the Roosevelt Fire started.  Steven, Dakota, and others in the party got a very good look at the fire shortly after it started, and Steven called the Forest Service around 1:00 p.m. to report it.

20.     The Forest Service personnel to whom Steven spoke seemed to be aware of the fire but thanked him for the report.  Steven also pulled the GPS location of the fire off a photo he captured on his phone from across the canyon.  He called his wife, Debora Knezovich, to convey the coordinates to her to relay the location to fire authorities.  The Forest Service officers who took the Knezovich's calls were

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

already aware of the fire but thanked them for their reports and acted as if they had already dispatched firefighters to suppress it.

21.    No Forest Service officer warned either Steven or Debora that the Forest Service was, at the time, considering letting the fire burn and using it for alleged resource benefits.  If the Forest Service had told them this, Dakota and Steven would have immediately evacuated the area.

22.    Around 4:00 o'clock p.m. on September 15, 2018, two forest service backcountry rangers approached the Knezovich hunting party asking about the locations of hunting camps in the area.  Members of the party told the rangers they were leaving the next day, Sunday, and offered to let the Forest Service use their camp as a base of firefighting operations.  The rangers did not inform the Knezovich party that they did not intend to fight the fire.  The rangers also did not tell them the Forest Service had decided to monitor it instead.  The rangers did not suggest that the Knezovich party should evacuate.

23.    National Oceanic and Atmospheric Administration (NOAA) weather archives for September 15, 2018, show that no lightning ground-strikes occurred in the area after September 3, 2018—12 days before the first report of the Roosevelt Fire.  Forest Service officials had real-time access to this data via the world wide web when the fire started and knew immediately that the cause and origin of the

9
—

Roosevelt Fire was not natural.

24.    The Forest Service assigned a type-4 incident commander "initially to monitor the fire and implement actions for providing for the welfare of the many hunters and hunting camps in the vicinity of the fire."  Despite this direction, the Forest Service did not tell Steven or Debora that the Forest Service plan was to monitor the fire and otherwise just let it burn as a "restoration fire."  If the Forest Service had told them this, Dakota and Steven would have immediately evacuated the area.

25.    The next day, on Sunday, September 16, 2018, the Forest Service published its initial Wildfire Decision Support System (WFDSS) documentation for the Roosevelt Fire.  It listed its "course of action" as follows:

> Monitor and inform the public:
> Monitor the fire by patrolling, hiking, air patrol, and IR flights
> Monitor fire activity as it relates to the established MAP's [*sic*]

26.    In the "rationale," written to justify the course of action, the WFDSS states: "My Decision is to manage the Roosevelt Fire with an initial emphasis on monitoring fire progression and visitor safety. The fire has a high probability of remaining manageable with a smaller organization due to few values at risk.  . . . The Forest service [*sic*] has been the primary decision makers in the decision process.  . . . Monitoring fire progression and providing for visitor safety is the emphasis. . . ."

10
—

27.    At the time of the decision, as the WFDSS documents, Bridger-Teton National Forest was under a forecast for "Red Flag" conditions, including high winds and low relative humidity the day the fire was discovered. Warm, dry conditions were expected to continue through the week.

28.    On the same day, September 16, 2018, the Forest Service stated in a news release that it urged visitors and hunters to stay out of the area near the fire.  It further stated, with emphasis added:

> Wildfires burning under the right weather conditions and in appropriate [*sic*] locations can break-up forest fuels and create landscapes that are more resistant to large, high-severity fires. A combination of tools, including the ***use of restoration wildfire***, can help managers reduce the risk of future mega-fires in the Bridger-Teton National Forest. Naturally-ignited fires managed for restoration purposes can improve forest health and resilience and resistance to high-severity wildfires.

The Forest Service also acknowledged in the news release: "Fire danger on the Forest is High."  Elsewhere, a duly authorized Forest Service public information officer told local news media: "The [Roosevelt] fire is being ***used*** on the landscape to reintroduce fire in its natural role."  (Emphasis added.)

29.    The same day, September 16, 2018, Plaintiff Dakota Knezovich and Plaintiff Steven Knezovich planned to leave the hunting camp for home that afternoon.  They had to get back to work and school on Monday.  They spent the early morning hunting and were intending to leave for home late in the morning.

11
—

As they were packing, the two Forest Service backcountry rangers they had seen the day before approached the Knezovich party again around midday.  This time the rangers informed the party that the Forest Service was not fighting the fire and were letting it burn.  The rangers advised that the party had several hours to make it back where they had parked their trucks and stock trailers at the trailhead.  The rangers expressed no sense of urgency.  The Knezovichs trusted their information as the rangers had just hiked in from the trailhead.

30.     Steven got started first, as he was on foot as the other hunters were horseback.  As he made his way down the trail, he reencountered one of the rangers.  This time the ranger warned that the restoration fire was moving fast, and the Knezovich party had "a short window" to escape the fire.

31.     The Knezovichs immediately made all haste to depart before the fire could cut them off.  During what became a harrowing, life-changing effort to escape, however, both Knezovichs were surrounded by fire and nearly trapped.  Intense radiant heat from the burning and exploding trees all around them caused them to suffer severe burns to their torsos, arms, and faces.  They still suffer from burn injuries and will likely suffer from them for life.

32.     Both Dakota and Steven also suffered emotional distress and mental

suffering as they were both convinced, at one point, that they would perish in the fire. Fortunately, they both escaped with their lives, but only by the narrowest possible margin. A few more moments of delay in their decision to evacuate or any lessening in their haste would have resulted in their deaths. Both father and son still suffer from persistent memories and mental disturbances caused by the harrowing events that injured them severely and nearly cost them their lives. They worry about their scars and injuries every day.

33. The Forest Service was aware of the Knezovichs' ordeal and near-death experience shortly after it happened. It was also aware of the extreme fire behavior displayed during the ordeal. Still, it made no change in its decision to monitor the fire and continued to use the fire for resource benefits.

34. The Forest Service did not notify or communicate with the public in general, or with the residents of Hoback Ranches in particular, of its decision to use the Roosevelt Fire as a restoration fire and the associated risk to the neighborhood. Had it done so, Plaintiffs Taylor, Baker, the Wrights, and HRSID would have undertaken measures to protect their property interests from the risk created by the restoration fire. But for the Forest Service decision to use the Roosevelt Fire for a restoration fire, Plaintiffs would not have suffered damages in the Roosevelt Fire.

13
—

35.     On September 17, 2018, the Forest Service used the Roosevelt Fire to restore fire to the landscape several miles to the east, triggering evacuations in residential areas northwest of Pinedale, Wyoming, in its path.

36.     On September 18, 2018, the Forest Service used the Roosevelt Fire to restore to and treat landscapes in the direction of Bondurant, Wyoming.  The Forest Service's activity caused local authorities to order the evacuation of 230 homes.  The evacuation order forced Plaintiffs Taylor and Baker and Plaintiffs Wright off their real property in the Hoback Ranches.

37.     By the morning of September 19, 2018, the Forest Service had used Roosevelt Fire to restore fire to the landscape of over 25,000 total acres.  It used the fire as a resource management tool despite a strict national policy against using human-caused fires for resource benefits.

38.     The next day, the Forest Service's restoration fire burned its first home in Hoback Subdivision.

39.     On September 21-23, 2018, the Forest Service's use of the Roosevelt Fire as a restoration fire caused damage to real and personal property owned by Plaintiffs Taylor and Baker and Plaintiffs Wright.

40.     On September 20-23, 2018, the Forest Services' use of the Roosevelt

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

Fire as a restoration fire burned property used by HRISD for the improvements and services it is charged with maintaining and repairing in Hoback Ranches, including, without limitation, the lands surrounding and supporting Rim Road, an improvement within Hoback Ranches.

## FIRST CLAIM FOR RELIEF

### (Negligence – Dakota Knezovich)

41.     Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

42.     The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or similar circumstances as those described herein.

43.     The Forest Service was negligent because it breached its duty of care by failing to inform the Knezovich hunting party that the Forest Service was not suppressing or did not intend to suppress the Roosevelt Fire.

44.     The Forest Service's breach of its duty of care caused Dakota Knezovich to suffer personal injury. The breach played a substantial part in bringing about personal injury to Dakota, as stated herein.

45.     The personal injury Dakota suffered as a result of the Forest Service's

negligence includes pain, suffering, emotional distress, disability and disfigurement, loss of enjoyment of life (both in the past and in the future), loss of earnings and earning capacity, medical expenses, caretaking and loss of consortium.

46.     Dakota is entitled to a money judgment against the Forest Service in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

## (Premises Liability – Dakota Knezovich)

47.     Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

48.     The Forest Service had a duty, as the owner or occupant of the Bridger-Teton National Forest, to act as a reasonable person in maintaining the property it occupied in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk.

49.     The Forest Service had a duty to use ordinary care to keep the Bridger-Teton National Forest in a safe condition and was charged with an affirmative duty to protect visitors against dangers known to the Forest Service and dangers discoverable with the exercise of reasonable care.

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

50.    The Forest Service breached its duty as the occupant of the Bridger-Teton National Forest by failing to inform the Knezovich hunting party that the Forest Service was not suppressing the Roosevelt Fire or did not intend to suppress the Roosevelt Fire.

51.    The Forest Service's breach of its duty as the occupant of land caused Dakota Knezovich to suffer personal injury. The breach played a substantial part in bringing about injury to Dakota.

52.    The injury Dakota suffered as a result of the Forest Service's breach of due care as the occupant of land includes pain, suffering, emotional distress, disability and disfigurement, loss of enjoyment of life (both in the past and in the future), loss of earnings and earning capacity, medical expenses, caretaking and loss of consortium.

53.    Dakota is entitled to a money judgment against the Forest Service in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

### (Negligence – Steven Knezovich)

54.    Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

55.     The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or similar circumstances.

56.     The Forest Service was negligent because it breached its duty of care by failing to inform the Knezovich hunting party that the Forest Service was not suppressing the Roosevelt Fire or did not intend to suppress the Roosevelt Fire.

57.     The Forest Service's breach of its duty of care caused Steven Knezovich to suffer personal injury, in that the breach played a substantial part in bringing about injury to Steven.

58.     The injury Steven suffered as a result of the Forest Service's breach of due care as the occupant of land includes pain, suffering, emotional distress, disability and disfigurement, loss of enjoyment of life (both in the past and in the future), loss of earnings and earning capacity, medical expenses, caretaking and loss of consortium.  As a result of his injuries, Steven is entitled to a money judgment against the Forest Service in an amount to be determined at trial

59.     As a result of Steven's injuries, his spouse, Debora Knezovich, is entitled to a money judgment against the Forest Service for loss of consortium, including loss of Steven's services, society, companionship, affection, love, advice,

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

guidance, or sexual relations in an amount to be determined at trial.

60.    As a result of Steven's injuries, his son, Dakota Knezovich, is entitled to a money judgment against the Forest Service for loss of consortium, including loss of Steven's services, society, companionship, affection, love, advice, or guidance in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### (Premises Liability – Steven Knezovich)

61.    Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

62.    The Forest Service had a duty, as the owner or occupant of the Bridger-Teton National Forest, to act as a reasonable person in maintaining the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk.

63.    The Forest Service had a duty to use ordinary care to keep the Bridger-Teton National Forest in a safe condition and was charged with an affirmative duty to protect visitors against dangers known to the Forest Service and dangers discoverable with the exercise of reasonable care.

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

64.     The Forest Service breached its duty, as the occupant of the Bridger-Teton National Forest, by failing to inform the Knezovich hunting party that the Forest Service was not suppressing the Roosevelt Fire or did not intend to suppress the Roosevelt Fire.

65.     The Forest Service's breach of its duty as the occupant of land caused Steven Knezovich to suffer personal injury. The breach played a substantial part in bringing about injury to Steven.

66.     The injury Steven suffered as a result of the Forest Service's breach of due care as the occupant of land includes pain, suffering, emotional distress, disability and disfigurement, loss of enjoyment of life (both in the past and in the future), loss of earnings and earning capacity, medical expenses, caretaking and loss of consortium.  As a result of his injuries, Steven is entitled to a money judgment against the Forest Service in an amount to be determined at trial

67.     As a result of Steven's injuries, his spouse, Debora Knezovich, is entitled to a money judgment against the Forest Service for loss of consortium, including loss of Steven's services, society, companionship, affection, love, advice, guidance, or sexual relations in an amount to be determined at trial.

68.     As a result of Steven's injuries, his son, Dakota Knezovich, is entitled to a money judgment against the Forest Service for loss of consortium, including

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

loss of Steven's services, society, companionship, affection, love, advice, or guidance in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### (Negligence -- Taylor and Baker)

69.    Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

70.    The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or similar circumstances.

71.    The Forest Service was negligent in that it breached its duty of care by electing to use the Roosevelt Fire for resource management purposes during a time of high fire danger.

72.    The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or similar circumstances in communicating with local landowners about its plan to use the Roosevelt Fire and the risk such use would create.

73.    The Forest Service was negligent in that it breached its duty of care by failing to communicate with Plaintiffs about its plan to use the Roosevelt Fire and the risk such use would create.

74.     The Forest Service's breach of its duty of care caused Plaintiffs Taylor and Baker to suffer personal injury, in that the breach played a substantial part in bringing about injury to both.

75.     The Forest Service's breach of its duty of care caused Plaintiffs Taylor and Baker to suffer damage to their real and personal property. The breach played a substantial part in bringing about damage to their real and personal property.

76.     The injuries Taylor and Baker suffered as a result of the Forest Service's breach of due care includes pain, suffering, emotional distress, disability and disfigurement, loss of enjoyment of life (both in the past and in the future), loss of earnings, and earning capacity, medical expenses, caretaking and loss of consortium.  As a result of their injuries, Taylor and Baker are entitled to a money judgment against the Forest Service in an amount to be determined at trial.

77.     As a result of Taylor's and Baker's injuries, each is entitled to damages for loss of the other's consortium, including loss of the other's services, society, companionship, affection, love, advice, guidance, or sexual relations in an amount to be determined at trial.

78.     The personal property damage Taylor and Baker suffered as a result of the Forest Service's breach of due care include the fair market value of the personal

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

property destroyed and the cost to repair the personal property damaged, and in the loss of use of such property, in an amount to be determined at trial.

79.     The real property damage Taylor and Baker suffered as a result of the Forest Service's breach of due care is of permanent character and cannot be repaired except at great expense, and therefore the compensation due consists of the difference between the value of the real property before and after damage, as well as for the loss of the use of such property, in an amount to be determined at trial.

80.     Plaintiffs Taylor and Baker are entitled to a money judgment against the Forest Service for personal injury, damage to personal property, and damage to real property in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (Trespass -- Taylor and Baker)

81.     Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

82.     Plaintiffs Taylor and Baker had an exclusive possessory interest in the real property described herein and the personal property stored on their real property.

83.     The Forest Service's Roosevelt Fire invaded the interests of Taylor and Baker in their real and personal property, described herein, and its physical condition, which invasion constitutes trespass to real property and chattels.

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

84.     The Forest Service's trespass caused Plaintiffs Taylor and Baker to suffer damage to their real and personal property. The breach played a substantial part in bringing about damage to their real and personal property.

85.     The injuries Taylor and Baker suffered as a result of the Forest Service's trespass includes pain, suffering, emotional distress, disability and disfigurement, loss of enjoyment of life (both in the past and in the future), loss of earnings, and earning capacity, medical expenses, caretaking and loss of consortium. As a result of their injuries, Taylor and Baker are entitled to a money judgment against the Forest Service in an amount to be determined at trial.

86.     As a result of Taylor's and Baker's injuries, each is entitled to damages for loss of the other's consortium, including loss of the other's services, society, companionship, affection, love, advice, guidance, or sexual relations in an amount to be determined at trial.

87.     The personal property damage Taylor and Baker suffered as a result of the Forest Service's trespass include the fair market value of the personal property destroyed and the cost to repair the personal property damaged, and in the loss of use of such property, in an amount to be determined at trial.

88.     The real property damage Taylor and Baker suffered as a result of the

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

Forest Service's trespass is of permanent character and cannot be repaired except at great expense, and therefore the compensation due consists of the difference between the value of the real property before and after damage, as well as for the loss of the use of such property, in an amount to be determined at trial.

89.     Plaintiffs Taylor and Baker are entitled to a money judgment against the Forest Service for personal injury, damage to personal property, and damage to real property in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (Negligence – Wrights)

90.     Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

91.     The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or similar circumstances.

92.     The Forest Service was negligent in that it breached its duty of care by electing to use the Roosevelt Fire for resource management purposes during a time of high fire danger.

93.     The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or

25
—

similar circumstances in communicating with local landowners about its plan to use the Roosevelt Fire and the risk such use would create.

94.    The Forest Service was negligent in that it breached its duty of care by failing to communicate with Plaintiffs about its plan to use the Roosevelt Fire and the risk such use would create.

95.    The Forest Service's breach of its duty of care caused Plaintiffs Wright to suffer damage to their real and personal property. The breach played a substantial part in bringing about damage to their real and personal property.

96.    The injuries the Wrights suffered from the Forest Service's breach of due care include emotional distress and mental suffering.  As a result of their injuries, the Wrights are entitled to a money judgment against the Forest Service in an amount to be determined at trial.

97.    The personal property damage the Wrights suffered as a result of the Forest Service's breach of due care includes the fair market value of the personal property destroyed and the cost to repair the personal property damaged, and in the loss of use of such property, in an amount to be determined at trial.

98.    The real property damage the Wrights suffered as a result of the Forest Service's breach of due care is of permanent character and cannot be repaired or replaced except at great expense, and therefore compensation due consists of the

26
—

difference between the value of the real property before and after damage, as well as for the loss of the use of such property, in an amount to be determined at trial.

99.    Plaintiffs Wrights are entitled to a money judgment against the Forest Service for personal injury, damage to personal property, and damage to real property in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### (Trespass – the Wrights)

100.   Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

101.   Plaintiffs Wright had an exclusive possessory interest in the real property described herein and the personal property stored on their real property.

102.   The Forest Service's Roosevelt Fire invaded the interests of the Wrights in their real and personal property, described herein, and its physical condition, which invasion constitutes trespass to real property and chattels.

103.   The Forest Service's trespass caused the Wrights to suffer damage to their real and personal property. The breach played a substantial part in bringing about damage to their real and personal property.

104.   The injuries the Wrights suffered as a result of the Forest Service's trespass include pain, suffering, emotional distress, disability and disfigurement, loss

27

of enjoyment of life (both in the past and in the future), loss of earnings and earning capacity, medical expenses, caretaking and loss of consortium.  As a result of their injuries, Taylor and Baker are entitled to a money judgment against the Forest Service in an amount to be determined at trial.

105.   As a result of the Wrights' injuries, each is entitled to damages for loss of the other's consortium, including loss of the other's services, society, companionship, affection, love, advice, guidance, or sexual relations in an amount to be determined at trial.

106.   The personal property damage the Wrights suffered as a result of the Forest Service's trespass includes the fair market value of the personal property destroyed and the cost to repair the personal property damaged, and in the loss of use of such property, in an amount to be determined at trial.

107.   The real property damage the Wrights suffered as a result of the Forest Service's trespass is of permanent character and cannot be repaired except at great expense, and therefore the compensation due consists of the difference between the value of the real property before and after damage, as well as for the loss of the use of such property, in an amount to be determined at trial.

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

108.   Plaintiffs Wright are entitled to a money judgment against the Forest Service for personal injury, damage to personal property, and damage to real property in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### (Negligence HRSID)

109.   Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

110.   The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or similar circumstances.

111.   The Forest Service was negligent in that it breached its duty of care by electing to use the Roosevelt Fire for resources management purposes during a time of high fire danger.  The Forest Service's breach of its duty of care caused Plaintiff HRISD to suffer injury to its real property interests.  The breach played a substantial part in bringing about damage to HRSID's interests and property, for which it bears legal responsibility to maintain and repair.

112.   Plaintiff HRISD is entitled to a money judgment against the Forest Service for the full cost of repairing its real property interests in an amount to be determined at trial.

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

## TENTH CLAIM FOR RELIEF

## (Trespass – HRSID)

113.   Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

114.   Plaintiff HRISD had an exclusive easement interest in the real property described herein and the personal property stored on their real property.

115.   The Forest Service's Roosevelt Fire invaded the interests of Plaintiff HRISD's real property interest, described herein, and its physical condition, which invasion constitutes trespass to real property.

116.   The Forest Service's trespass caused the HRSDID to suffer damage to its real property. The breach played a substantial part in bringing about damage to its real property.

117.   The real property damage HRSID suffered as a result of the Forest Service's trespass is the cost of repair or replacement and the loss of the use of such property, in an amount to be determined at trial.

118.   Plaintiff HRSID is entitled to a money judgment against the Forest Service for damage to real property in an amount to be determined at trial.

. . . . .

. . . . .

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

## REQUEST FOR RELIEF

Accordingly, Plaintiffs respectfully request the Court enter its order granting a money judgment against Defendant in such amount as Plaintiffs shall prove at the trial of this action:

1.      To compensate Plaintiffs for the torts stated herein;

2.      For attorney fees and costs as allowed by law; and

3.      For such other and further relief as the Court may find appropriate in the circumstances.

DATED this 23rd day of September 2021.

> Respectfully Submitted,
> **RHOADES SIEFERT & ERICKSON PLLC**
>
>
> By   /s/ *Quentin M. Rhoades*
>       Quentin M. Rhoades
>       *Pro Querente*
>
>
> By    /s/  Bradley L. Booke
>       Bradley L. Booke

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

## *REQUEST FOR ADVISORY JURY*

Acknowledging that they are not entitled to a jury trial under the claims alleged herein, Plaintiffs respectfully request the Court to impanel an advisory jury in the exercise of its discretion.

DATED this 23rd day of September 2021.

Respectfully Submitted,
**RHOADES SIEFERT & ERICKSON PLLC**


By___/s/ *Quentin M. Rhoades*_____
        Quentin M. Rhoades
        *Pro Querente*

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL